## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **MEHMET HAKAN YAVUZ,** | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **MICHAEL MUKASEY, Attorney General of the United States;** *et al.*, | **Case No.  2:08CV119DAK** |
| **Defendants.** | |

This matter is before the court on Defendants' Motion to Dismiss and to Remand.  The court held a hearing on the motion on July 22, 2008.  At the hearing, Plaintiff was represented by J. Shawn Foster, and Defendants were represented by Stephen J. Sorenson.  The court took the matter under advisement.  The court has carefully considered the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

### BACKGROUND

Plaintiff is a native of Turkey and has been living in the United States as a Legal Permanent Resident for nearly eight years.  He is a tenured Associate Professor of Political Science at the University of Utah, has published books and articles on topics of importance to U.S. foreign policy, and is a frequent consultant to the U.S. Department of State on matters relating to Islamic movements.

In the summer of 2005, Plaintiff filed an Application for Naturalization as a United States Citizen with United States Citizenship and Immigration Services ("USCIS"). To be eligible for naturalization, a lawful permanent resident alien must generally be able to show: (1) a period of continuous residence within the United States for the last five years, 8 U.S.C. § 1427(a)(1); (2) good moral character, *id*. § 1427(3); (3) an understanding of the English language, U.S. history, and U.S. government, *id.* § 1423(a); and (4) an attachment and favorable position toward the United States and the U.S. Constitution, *id.* § 1447(a)(3).

Once an alien applies for naturalization, USCIS conducts a comprehensive background check to ensure that the alien is eligible for naturalization and not a risk to national security. *Id.* § 1446(a). "USCIS lacks authority to grant an application for naturalization until the background checks are completed." *Ibrhimi v. Still*, No. C06-5968, 2007 WL 841790, at 4 (N.D. Cal. Mar. 20 2007). As of the Appropriations Act of 1998, Congress began to require a criminal background investigation for all applicants for naturalization. Pub. L. No. 105-119, 111 Stat. 2448. In response to this statute, USCIS's predecessor, INS, enacted an "interim rule requir[ing] the Service to receive a definitive response from the FBI that a criminal background check has been completed before notifying applicants for naturalization to appear before a Service officer for the mandatory examination on the Form N-400, Application for Naturalization." 63 F.R. 12979, 12981-83, 12987-88, 1998 WL 112205 (March 17, 1998).

USCIS submitted the required name check request for Plaintiff to the FBI in July 2005 when Plaintiff submitted his application. On November 4, 2005, Plaintiff was interviewed by the USCIS and administered the U.S. History, Civics, and English Language exam. Plaintiff passed the exam. At the time of briefing on this motion, however, the background check on Plaintiff

still remained to be completed.[1]  But, at the time of oral argument on the motion, the government

orally represented to the court that the background check had been completed and that the check

had found a "hit."  The government could not identify the nature of the "hit," define what a "hit"

would usually entail, or provide anything more specific than merely stating that there was a "hit."

The government stated, however, that when there is a "hit," the USCIS would do follow up work

into the matter and resubmit the person's name to the FBI.  The government did not represent or

provide anything from the USCIS with respect to how they planned to proceed now that the

background check contained a hit.

Plaintiff brought this lawsuit, arguing that his application has been unlawfully delayed.

Plaintiff asks this court to assume jurisdiction over the naturalization adjudication and approve

his application.  Plaintiff asserts three causes of action:  (1) under 8 U.S.C. § 1447(b) and 28

U.S.C. § 2201, asking the court to take over the naturalization process, approve the application,

and administer the oath of naturalization or, in the alternative, to remand the matter to the USCIS

with instructions that it adjudicate his application within 30 days; (2) for mandatory or injunctive

relief directing the FBI to complete its name check within 30 days and USCIS to complete its

---

[1]  Prior to September 11, 2001, the FBI processed approximately 2.5 million name check
requests per year.  That number grew to over 4 million requests in fiscal year 2007.  That is an
increase of thousands per day.  In addition to this increased volume, in December 2002 and
January 2003, INS resubmitted 2.7 million name checks to the FBI for a more thorough review.
Those resubmitted name checks yielded 440,000 matches requiring further inquiry, some of
which have yet to be resolved.

Due to the significant backlog, the FBI and USCIS have recently announced a joint plan
to eliminate the backlog of name checks by June 2009, processing the oldest name checks first.
For applicants like Plaintiff, whose name check has been pending for more than two years, the
target for completing his name check was July 2008.  This target appears to have been met.

adjudication within 30 days thereafter;[2] and (3) for the same relief under the APA based on a

finding that Defendants' actions are unlawful.

Plaintiff asserts that although he meets the requirements of citizenship, the delay in

granting such benefits has impacted him in several meaningful ways.  He cannot vote or obtain

other public and financial benefits.  And, as long as he is denied citizenship, he remains

vulnerable to deportation and separation from his adopted home.  He is also unable to sponsor his

mother in Turkey for permanent residency.  Finally, without U.S. citizenship, Plaintiff, who

travels abroad several times a year for scholarly conferences, will continue to face difficulties

with U.S. Customs and Border Protection inspectors at ports of entry.

## DISCUSSION

Defendants move (1) to dismiss Plaintiff's mandamus, APA, and § 1447(b) claims; (2) to

dismiss all claims against the FBI and the director of the FBI; and (3) for an order remanding the

matter to the USCIS with instructions to adjudicate Plaintiff's application for naturalization

within a reasonable time.

Although Defendants raise several issues in their motion, the court must begin by looking

to the statute on which Plaintiff bases his claim.  Under Section 1447(b), if the USCIS has not

granted or denied an applicaiton for naturalization within 120 days of the required "examination"

of the applicant, the applicant can petition the district court in which he resides to determine the

matter or remand the matter to the USCIS with appropriate instructions.  *See* 8 U.S.C. § 1447(b).

Defendants argue that the 120-day period referenced in § 1447(b) begins only after the

investigative process is completed.  While Plaintiff argues that the term "examination" should

---

[2] Although this claim may appear to be moot because the FBI has completed its
background check, Plaintiff maintains that it is not moot if USCIS intends to resubmit his name
for a subsequent background check as a result of finding a "hit" with the first background check.

refer to Plaintiff's November 5, 2005 interview and examination, Defendants assert that the term means the completion of the entire investigative process.

Defendants recognize that the only circuit court to consider this issue has concluded that it is clear from the language of Section 1447(b), as well as the operative regulations and legislative history, that the examination that triggers the 120-day period is a discrete event, specifically the initial interview with USCIS. *Walji v. Gonzales*, 500 F.3d 432, 435-39 (5th Cir. 2007). There is also at least one court in this district that has relied on *Walji* and adopted its reasoning as its own. *Al-Shimary v. Gonzales*, No. 2:07cv397DS, 2007 WL 3046670 (D. Utah Oct. 17, 2007).

The facts and law addressed in *Walji* and *Al-Shimary* are directly on point with the present case. This court also agrees with and adopts the analysis set forth in *Walji* and the majority view opinions set forth by the *Walji* court. Accordingly, the court concludes that subject matter jurisdiction is present.

Under Section 1447(b), therefore, the court must decide whether to adjudicate the application or remand the matter to USCIS with appropriate instructions. Courts, including this one, that have found jurisdiction over naturalization applications under § 1447(b) have almost universally declined to determine the naturalization matter and have remanded the case to USCIS to adjudicate the application within a certain period of time. *See, e.g., Al-Shimary*, 2007 WL 3046670, at *1. The court agrees that the USCIS is the entity most appropriately equipped and suited to make a decision on a naturalization application.

In this case, where a "hit" was found in the initial background check, the court grants the USCIS 90 days to resolve issues relating to the "hit" and issue a determination on Plaintiff's application for naturalization. Because the court finds jurisdiction and determines that the

appropriate procedure is to remand the matter to the USCIS, the court need not address the

remaining issues in Defendants' motion to dismiss.

### CONCLUSION

Defendants' Motion to Dismiss is DENIED, and its Motion to Remand is GRANTED.

This matter is REMANDED to the United States Citizenship and Immigration Service with

instructions to issue a determination on Plaintiff's application for naturalization within 90 days.

DATED this 19th day of August, 2008.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge